## WALDEN *vs.* UNION BANK.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

A person who believes himself aggrieved, by the refusal of the board of
directors of a bank, to permit him to become a stockholder, may, whatever
be the value of the property offered, resort to an action for damages ; but he
cannot *appeal* from such a refusal to a court of original jurisdiction.

In such a case damages cannot be recovered for an honest error or mistake,
but they may be for capricious or improper conduct of the board.

When the minds of the board of directors, to whom is submitted the validity
of titles of property offered in mortgage, are not perfectly satisfied, their
duty to the corporation requires them to withhold the expression of their
satisfaction.

This action was brought to compel the Union Bank of
Louisiana, to receive the plaintiff's subscription and mortgage
for six hundred shares of their stock.

The petition avers that the plaintiff became a subscriber
for this amount of the stock of the bank, and for the purpose
of securing his subscription, according to the charter of the
Bank, offered to mortgage to the president and directors
thereof, his plantation situated in the parish of Jefferson

with the slaves thereon, and in cultivation having eight arpents front, by one hundred arpents in depth, bounded above by the land of J. B. F. Le Breton, and below by those of Robert Avart; and in pursuance of the regulations of the bank, presented the titles to said property; that under pretexts entirely unfounded in law, the president and directors of said bank refused his titles to said plantation as invalid, and rejected his subscription.

The defendants denied that the plaintiff was entitled to the stock claimed, because he had never complied with the requisitions of the charter, and the rules and regulations of the said bank. They further averred, that the titles produced by the plaintiff, were insufficient, incomplete and not valid in law; that the plaintiff could not have or maintain this action, because they, the defendants, were made by law the judges of the validity of the titles, and of the sufficiency of the property offered to secure the stock of said bank, and that as long as they acted in good faith, they were not liable to be sued.

J. J. Mercier, Esq., testified that he presented the titles to the attorney of the bank, who after examination of them, objected to them, saying that the renunciation of Mrs. Poultney, was wanting to render the titles of plaintiff regular. That witness immediately procured the renunciation of Mrs. Poultney, and presented the same with the former documents, to the attorney, who said that plaintiff's title was then complete, and requested witness to desire plaintiff to call at the bank, and answer some printed questions which were propounded to persons subscribing to the stock. Witness accordingly handed a copy of these printed interrogatories to the plaintiff.

J. B. Perrault, cashier of the Union Bank, testified that the plantation of plaintiff, mentioned in the petition, was, he believed, not appraised by the appraisers of the bank, but was approved by the board of directors. It was appraised at thirty-two thousand dollars, that is, the land alone, without the slaves. That the plaintiff has been admitted as a city subscriber, to subscribe to the capital stock of the Union Bank.

The plaintiff had a judgment, from which the defendants appealed.

*Denis,* for defendants and appellants, relied on the following authorities and arguments:

1. Paillet Manuel de droit Français. *Note* (*a*) *on the* 411*th art. of the Napoleon Code.* " *Un conseil de famille tenu sans citation, on sans observer les délais que la citation devait entrainer, estoalable.*" *Ainsi jugé par la cour royale d'agen le* 10 *Decembre,* 1806, *et confirmé le* 22 *Juillet,* 1807, *par la cour de cassation qui a rejété le pouvoir.*

2. Could the judge of the Court of Probates, in and for the parish of Jefferson, authorise a notary public, residing in New-Orleans, to hold a family meeting? Yes, for this authorisation is an act of voluntary jurisdiction, not a contentious jurisdiction. *See Merlin's repertoire de jurisprudence, new octavo Brussels edition., vol.* 16; *verbo jurisdiction gracieuse ou volontaire, page* 356. " *C'est en vertu de la jurisdiction volontaire, et non pas en vertu de la jurisdiction contentieuse que le magistrat procede toutes les fois qu'il prononce sur une demande qui soit sa nature, soit d'après l'état des choses, n'est pas susceptible de contradiction.  Page* 260, 5, *on a remarqué une autre distinction, entre les actes de la jurisdiction volontaire, et les actes de la jurisdiction contentieuse, c'est que tandis que les seconds ne peuvent être faits par le juge que dans son territoire; les premiers peuvent être faits en quelque lieu que ce soit.*"

3. This may perhaps not be true, in this country, with regard to the judge himself, who cannot act out of his parish; but he may authorise a notary residing in another parish: *car les actes de jurisdiction volontaire* " *peuvent être faits en quelque lien que ce soit, page* 363, 8.  *Il reste entre la jurisdiction volontaire, et la jurisdiction contentieuse une derniere difference, c'est que celui qui a recours a la jurisdiction volontaire, ne demandé au juge que l'interposition de son authorité et que ceux que des prétentions contradictoires forcent de s'adresser aux tribunaux; leur demandent une sentence.  La jurisdiction volontaire est,* '*magis*

*imperii quam jurisdictionis' et la contentieuse est,* 'magis
*jurisdictionis quam imperii.*' "

4. The two first family meetings were composed of cousins.
The last held in New-Orleans, was composed of uncles, who
are certainly nearer relations, and who were unwilling to go
in the parish of Jefferson.

5. The tutrix was not present at the family meeting, she
retired after having signed. Besides, as to her presence.
See 4 *La. Rep.* 391. *Etie's Heirs* vs. *Cade.*

*Preston,* for plaintiff and appellee, replied to Mr. Denis'
arguments, as follows:

1. The judge of the parish of Jefferson could not order
a notary of New-Orleans to hold the meeting. *Code* 305,
306, 307, *acts of* 1826, *p.* 164. He can commission any
notary or justice of the peace of the state, in the words of the
Code, a mere ministerial duty.

2. That the members of the family meeting, came without
being summoned. The only object of the law requiring
them to be summoned, was to get them to come together.
" *Cessante ratione cessat lex.*" The time was given not to
deliberate; they are to deliberate after they meet and see
the petition.

3. That the tutrix was present at the meeting. The
record does not mention that she mingled in the deliberation.
She was properly present to explain any thing that might
be required; to give any information to the meeting.

4. Adjudication to Soniat. Therefore, the property pass-
ed out of Beal's heirs and son, and Soniat acknowledges *he
bought for Walden. Code* 2601.

5. Renunciation of Mrs. Poultney. *7 Toullier.* But she
renounces for the express purpose of satisfying the bank, and
any acceptance, and that of the bank is provable *aliunde.
Jean Joseph* vs. *Moreno.* 2 *La. Rep.* 460.

6. That he did not present *title to slaves.* It is not requir-
ed by the 8th section, because subscription may be made
upon a cultivated plantation, without slaves. The legisla-
ture could not have intended to exclude white cultivators.

EASTERN DIS.
*March*, 1834.
═══════════
WALDEN
*vs.*
UNION BANK. It was not required by the direction of the bank, as they were bound to require by section 24th, of the charter. As they were to be satisfied, the term implies, that they should say in what the attempt to satisfy them was unsatisfactory.

7. That the property could not be sold in New-Orleans, being situated in the parish of Jefferson; but see the case of *Julia Peirce*, that it may be done on the advice of a family meeting.

8. That the bank are the *sole* judges, but must act *legally* in their discretion. The decision on this point is conclusive, in the case of *The State of Louisiana* vs. *The Bank of Louisiana*. They must not *only doubt;* but there must be a reasonable foundation for their doubts. As a criminal judge always remarks to a jury, in answer to the defendant's counsel; *their doubts* must be reasonable in order to acquit.

MARTIN, J., delivered the opinion of the court.

The plaintiff states he subscribed for six hundred shares of the capital of the bank, and for the security thereof, he offered to mortgage, according to a provision of the charter, a plantation in the parish of Jefferson, in cultivation, with the slaves thereon, and prescribed his title thereto, to the president and directors, who under pretences, utterly unfounded, refused and rejected his subscription. He then prayed for a judgment, directing them to except and receive his subscription and mortgage.

The defendants denied the plaintiff's right to the stock claimed, as he had not complied with the requisitions of the charter, and the rules and regulations of the corporation; and the titles he produced were insufficient, incomplete, and not valid in law. They denied the plaintiff's right of action, as the charter made the directors judges of the validity of the titles, and the sufficiency of the property offered by the stockholders respectively.

There was judgment for the plaintiff, and the defendants appealed.

It appears the District Court considered any stockholder, who thought himself aggrieved by the decision of the direc-

EASTERN DIS.
March, 1834.

WALDEN
vs.
UNION BANK.

tors, on the validity of his title, and the sufficiency of the property by him offered, to secure the portion of the capital subscribed by him, *constitutionally* entitled to at\ appeal, in cases of greater value than three hundred dollars, The last ground of defence was, therefore, overruled.

The eighth section of the charter, requires the stc rkholders respectively, to produce title, *to the satisfaction of the directors.* It appears to us the District Court erred, in considering the decision of the directors on this validity, and sufficiency as a judgment, from which the constitution authorises an appeal, when the shares subscribed exceed in value the sum of three hundred dollars. Whatever be the *value*, the party who thinks himself aggrieved, has the same right of action, *not of appeal*, to a court of original jurisdiction, for damages; not indeed in case of an honest error or mistake, but in that of a capricious or improper conduct. *State* vs. *Bank of Louisiana*, 5 *Martin, N. S.* 341.

This leads us to the inquiry, whether the board in the present instance, acted in such a manner as to authorise the plaintiff to seek such a remedy, in a court of justice?

The land offered to be mortgaged for the security of the plaintiff's shares, was purchased at the sale of a succession, in which minors were interested; the last bidder, after the adjudication, discovered that the members of the family meeting, which had been called to deliberate, before the sale, had not been summoned to appear before the notary, on a particular day, but had assembled without any citation, before a notary in the city of New-Orleans, while the previous proceedings, and the order for their meeting had been carried on before, and issued by the judge of an adjoining parish. On consulting counsel, the bidder was advised that his purchase might occasion him trouble, and the title he would acquire thereby, might be shaken. He declined complying with the terms of the sale, but certified he had bid for the plaintiff, who afterwards finally obtained the title, which he now complains the board, without any sound pretence, declared *unsatisfactory*, and rejected.

A person who believes himself aggrieved, by the refusal of the board of directors of a bank, to permit him to become a stockholder, may, whatever be the value of the property offered, resort to an action for damages; but he cannot appeal from such a refusal to a court of original jurisdiction. In such a case damages cannot be recovered for an honest error or mistake, but they may be for capricious or improper conduct of the board.

EASTERN DIS.
March, 1834.

WALDEN
vs.
UNION BANK.

No judicial decision, has as yet settled, whether the citation of the members of a family meeting, mentioned in the Code of Practice, be or not an essential formality; whether the meeting may take place out of the parish of the judge who orders it; whether the property of a minor, adjudicated to a bidder, who declines complying with the terms of the sale, may in the certificate of the latter, show he did bid for another person, may be legally conveyed to this person, on his compliance with the terms; and the counsel of the bank reported to the board his opinion, that he could not report the title of the plaintiff as a satisfactory one.

On these unsettled questions we ought not to express our opinion, as it might effect the rights of persons who are not before us. But we are not able to say, that the directors did not exercise a proper discretion when they declined to express their *satisfaction*, with the plaintiff's title.

When the minds of the board of directors, to whom is submitted the validity of titles of property offered in mortgage, are not perfectly satisfied, their duty to the corporation requires them to withhold the expression of their satisfaction.

Directors are not necessarily men learned in the law; when their minds are not perfectly satisfied, their duty to the corporation, is to withhold the expression of their satisfaction. In the present case, we see no ground to suspect capricious and improper views, and we think that if they have erred, the plaintiff has sustained *damnum absque injuria* damage, but no injury; the title has been fairly considered by those whom the charter designates for that purpose, and has proven and been declared *unsatisfactory*.

This view of the case renders it unnecessary to examine the other grounds of defence.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and that there be judgment for the defendants, with costs in both courts.